UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

CENTRAL DIVISION

**FILED**
OCT 21 2016



| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>JOSEPH EDWARD CORDIER,<br><br>Defendant. | 3:16-CR-30068(01)-RAL<br><br>REPORT AND RECOMMENDATION FOR DISPOSITION OF MOTION TO SUPPRESS STATEMENTS |

D.F., the minor daughter of Joseph Edward Cordier's ex-girlfriend, accused him of having sexual contact with her seven to nine years ago while she and her mother lived with him in Winner tribal housing. An FBI agent interviewed Cordier while he was in jail and he made statements to the agent which he now seeks to suppress. Because the statements were lawfully obtained, the Court recommends that Cordier's suppression motion be denied.

## BACKGROUND

On November 18, 2014, Oscar Ramirez, an FBI special agent, interviewed Cordier at the Winner City Jail about Cordier allegedly having inappropriate sexual contact with D.F. The interview lasted roughly two hours and forty-five minutes and was recorded.

Before any questioning took place, Agent Ramirez informed Cordier of his *Miranda* rights from an FBI advice of rights form. Cordier acknowledged that he understood his rights. After reading aloud the waiver portion of the form and explaining it, the agent presented the form to Cordier and asked if he could please sign the same. Cordier appeared to read the form but, with pen in hand, twice inquired, "So I'm not surrendering any rights right now?" The agent assured him that he was not, saying, "No, no, of course not. I am *advising* you of your rights and . . . you're allowing me to talk to you and so you are waiving your rights. * * * This is completely voluntary. The only reason why I'm doing this is because you're in custody by something completely unrelated from local stuff here. * * * Okay?" (emphasis in the original.) Cordier responded, "Well, I don't wanna waive my rights though." The agent replied, "You have to first waive your rights in order for me to talk to you." F this, the agent showed Cordier the waiver, paraphrased it, and then said, "If you understand all of this and at this time you're willing to answer questions, go ahead and sign there." The agent also informed Cordier that he could invoke his rights at any time and could tell the agent "to go screw [him]self" and stop questioning. Cordier signed the form, waiving his rights, and answered a glut of questions, over a protracted time period, without a break.

Cordier was ultimately indicted approximately 17 months later and charged with aggravated sexual abuse and abusive sexual contact of D.F. (one count each). He thereafter moved to suppress his statements, claiming they were elicited in violation of

2

*Miranda*[1] and were involuntary under the Fifth Amendment to the United States Constitution.

The Government filed a response to the motion, resisting Cordier's claims. An evidentiary hearing was held on October 13, 2016, at which Agent Ramirez testified and six exhibits were received into evidence. Cordier is scheduled to stand trial on both charges early next year.

## DISCUSSION

### A. Right to Remain Silent

Cordier initially claims that the statements he made to Agent Ramirez should be suppressed because he invoked his Fifth Amendment right to remain silent. The recording indicates that after being Mirandized from an advice of rights form and asked to sign the waiver (labeled consent) section of the form, Cordier responded, "So I'm not surrendering any rights now?" two separate times and then stated, "Well, I don't wanna waive my rights though." He argues that these utterances were sufficient as a matter of law to trigger his right to silence and cut off any questioning of him.

In the context of invoking the *Miranda* right to counsel, the United States Supreme Court has held that a suspect must do so "unambiguously."[2] If the suspect makes a statement concerning this right "that is ambiguous or equivocal" then police

---

[1] *See Miranda v. Arizona*, 384 U.S. 436 (1966).

[2] *Davis v. United States*, 512 U.S. 452, 459 (1994).

3

are not required to end the interrogation or ask questions to clarify whether the suspect wants to invoke his *Miranda* rights.[3]

According to the Supreme Court, "there is no principled reason to adopt different standards" for determining when a suspect invokes his *Miranda* right to remain silent.[4] Both, the Court has declared, "protect the privilege against compulsory self-incrimination,[5] by requiring an interrogation to cease when either right is invoked."[6]

A suspect thus who wants to invoke his right to remain silent and end an interview, must "do so unambiguously."[7] "Treating an ambiguous or equivocal act[ ] or statement as an invocation of *Miranda* rights 'might add marginally to *Miranda's* goal

---

[3]*Id.* at 459, 461-62.

[4]*Berghuis v. Thompkins*, 560 U.S. 370, 381 (2010); *see also Solem v. Stumes*, 465 U.S. 638, 648 (1984) ("[M]uch of the logic and language of [*Michigan v. Mosley*, 423 U.S. 96 (1975)]" which discuss the *Miranda* right to remain silent "could be applied to the invocation of the [*Miranda* right to counsel].").

[5]*See Miranda*, 384 U.S. at 467-73.

[6]*Berghuis*, 560 U.S. at 381; *see Mosley*, 423 U.S. at 103-04; *Fare v. Michael C.*, 442 U.S. 707, 719 (1979).

[7]*Berghuis*, 560 U.S. at 381; *see also United States v. Ferrer-Montoya*, 483 F.3d 566, 569 (8th Cir. 2007) ("A suspect invokes his right to remain silent by making 'a clear, consistent expression of the desire to remain silent.' Indirect, ambiguous, and equivocal statements or assertions of an intent to exercise the right are not enough to invoke it for purposes of *Miranda*."); *Mann v. Thalacker*, 246 F.3d 1092, 1100 (8th Cir. 2001) ("Being evasive and reluctant to talk is different from invoking one's right to remain silent.").

of dispelling the compulsion inherent in custodial interrogation.'"[8]  "But 'as *Miranda* holds, full comprehension of the rights to remain silent and to counsel are sufficient to expel or at least neutralize whatever coercion is inherent in the interrogation process.'"[9]

Cordier did not say that he wanted to remain silent or that he did not want to talk to agents or answer questions. Had he made any of these simple, unequivocal statements, he would have invoked his right to shut down all questioning. Because he did neither, there was no invocation of his right to silence and no "critical safeguard" for Agent Ramirez to "scrupulously honor."[10]

Cordier's statement that he did not "wanna waive [his] rights though" was not a clear, consistent expression of [his] desire to remain silent."[11] His use of the word "though" qualified the assertion of any right, making it equivocal.[12] "Though" means "however" or "but" and is used to introduce something opposed to or that qualifies what was just said.[13]

---

[8]*Berghuis*, 560 U.S. at 382 (*quoting Moran v. Burbine*, 475 U.S. 412, 425 (1986)).

[9]*Berghuis*, 560 U.S. at 382 (*quoting Burbine*, 475 U.S. at 427; *see also Davis*, 512 U.S. at 460.

[10]*See Berghuis*, 560 U.S. at 381-82; *Davis*, 512 U.S. at 459, 461-62.

[11]*United States v. Adams*, 820 F.3d 318, 323 (8th Cir. 2016) (*quoting United States v. Johnson*, 56 F.3d 947, 955 (8th Cir. 1995)).

[12]*See People v. Glaspie*, No. 320377, 2015 WL 3796241 at *3 (Mich. App. June 18, 2015).

[13]*See The New Oxford American Dictionary* at 1756 (2d ed. 2005); *see also Glaspie*,
(continued...)

5

In any event, Agent Ramirez handled the situation just as he should. He tried to clarify what he perceived to be an ambiguous response to his waiver inquiries. He emphasized that the waiver was just temporary and that Cordier could terminate the interview at any time. Cordier plainly communicated his willingness to talk to the agent by signing the waiver portion of the form and speaking with the agent – without talking to a lawyer or having one present – for more than two and one-half hours. Finding nothing improper about what the agent said or did,[14] Cordier's motion, to the

---

2015 WL 3796241 at *3 ("though" is defined as "however" or "nevertheless," *citing Merriam-Webster's Collegiate Dictionary* (2014)).

[14]*See Berghuis*, 560 U.S. at 381; *Davis*, 512 U.S. at 461-62; *Johnson*, 56 F.3d 947, 955 (8th Cir. 1995); *see also Adams*, 820 F.3d at 322-23 (Nah, I don't want to talk, man. I mean, I," not an unequivocal invocation of the right to remain silent; the phrase "I mean" signaled that the suspect intended to clarify the statement "I don't want to talk, man," rendering the statement ambiguous); *United States v. Havlik*, 710 F.3d 818, 822 (8th Cir. 2013) (the statement, "I guess you better get me a lawyer then" was not an unambiguous request for an attorney because the phrase "I guess" was equivocal); *United States v. Rodriguez*, 518 F.3d 1072, 1080 (9th Cir. 2008) ("Prior to obtaining an unambiguous and unequivocal waiver, a duty rests with the interrogating officer to clarify any ambiguity before beginning general interrogation."); *State v. Blackburn*, 2009 S.D. 37, ¶13, 766 N.W.2d 177, 183 ("After an officer has informed a suspect of his *Miranda* rights and has determined that the suspect understands those rights, the officer must then determine if the suspect is willing to waive those rights and answer questions. If the suspect responds ambiguously or equivocally, the officer must then focus on clarifying the suspect's intent.") (*quoting State v. Tuttle*, 2002 S.D. 94, ¶14, 650 N.W.2d 20, 28); *see generally* 2 Wayne R. LaFave, Jerold H. Israel, Nancy J. King & Orin S. Kerr, *Criminal Procedure*, §6.9(g) at 963 (4th ed. 2015) ("police efforts at clarification remain a *permissible* course of action in cases of actual ambiguity [of the right to silence]") (emphasis in the original).

6

extent that it seeks suppression under *Miranda,* based on an invocation of his right to remain silent, cannot be sustained.

## B. Waiver

Cordier next claims that his *Miranda* waiver was invalid. He asserts that he did not knowingly, voluntarily and intelligently waive his rights.

It is undisputed that Agent Ramirez informed Cordier of his *Miranda* rights before any questioning took place and that Cordier waived these rights by executing the advice of rights form. The issue here is whether the waiver was a knowing, voluntary and intelligent one.[15]

The *Miranda* waiver inquiry has "two distinct dimensions": the waiver "must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception" and the waiver must be made "with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it."[16] The totality of the circumstances are to be considered when determining whether a suspect's waiver is valid.[17]

---

[15] *See Thai v. Mapes,* 412 F.3d 970, 977 (8th Cir.), *cert. denied,* 546 U.S. 1039 (2005).

[16] *Berghuis,* 560 U.S. at 382 (*quoting Burbine,* 475 U.S. at 421).

[17] *See Burbine,* 475 U.S. at 421.

7

The recording, irrefutably shows that Cordier waived his *Miranda* rights. There is no basis to conclude that he did not understand his rights. It therefore follows that he chose not to invoke or rely on them when he spoke to Agent Ramirez.

First, credible evidence proves that Cordier was both mindful and appreciative of his rights and what he was doing.[18] He was read and acknowledged understanding each of his rights, including his right to remain silent and to stop answering questions at any time.

Second, Cordier's written waiver constitutes potent evidence he had a clear understanding of his rights and gave them up.[19] And his willingness to engage in a lengthy colloquy without the benefit of a lawyer and make statements – some of which were incriminating – was a "course of conduct indicating waiver" of his rights.[20] If Cordier wanted to remain silent, then he could have said nothing in response to Agent Ramirez's questions, or he could have unambiguously invoked his *Miranda* rights and ended the interrogation. The fact that he chose not to and elected instead to engage in a sustained dialogue with the agent by himself is indicative of a full-fledged waiver.[21]

---

[18]*See Berghuis*, 560 U.S. at 385-86; *Burbine*, 475 U.S. at 421.

[19]*See North Carolina v. Butler*, 441 U.S. 369, 373 (1979).

[20]*Berghuis*, 560 U.S. at 386; *Butler*, 441 U.S. at 373.

[21]*See Berghuis*, 560 U.S. at 386.

Third, there is no evidence, worthy of belief, that Cordier's statements were coerced.[22] At no time did Agent Ramirez threaten or intimidate Cordier, or yell, raise his voice, or become hostile toward him. Nor did the agent use any force, employ punishment, brandish his weapon or use rubber hose tactics to get Cordier to talk. Cordier's age, education, background (including his familiarity with the criminal justice system) and conduct that day did not indicate that he was low functioning or particularly suggestable and vulnerable to questioning by authority figures. His responses to inquiries also convincingly showed that he was not under the influence of alcohol or drugs and that he was not suffering from any mental or physical afflictions. And he cooperated with the agent, drawing him a diagram and answering hours' worth of questions.

Cordier contends that the lengthy duration of the interview made his waiver invalid. But he never asked to stop the interview or provided any sign he was too languid to go on. Other than the nearly three hours of elapsed time he spent with Agent Ramirez, Cordier points to nothing in the record evincing that he had, or was suffering from, a mental or physical condition so severe that his will was overborne. Notably, the Supreme Court and the Eighth Circuit Court of Appeals have upheld the

---

[22]*See id.* (citing *Burbine*, 475 U.S. at 521); *Colorado v. Connelly*, 479 U.S. 157, 163-67, 170 (1986); *United States v. Vinton*, 631 F.3d 476, 483 (8th Cir.), *cert. denied*, 132 S.Ct. 213 (2011); *United States v. Makes Room For Them*, 49 F.3d 410, 415 (8th Cir. 1995).

validity of waivers made under circumstances much more extreme than those found in this case.[23]

In the final analysis, this is not one of those isolated situations in which a suspect, after being properly advised of his *Miranda* rights, failed to make an open and autonomous decision to speak with probing agent and incriminate himself. Cordier's statements were made voluntarily and with a full awareness of his rights, including his right to remain silent.[24]

## C. Voluntariness

"Cases in which a defendant can make a colorable argument that a self-incriminating statement was 'compelled' despite the fact that law enforcement

---

[23]*See e.g. Stein v. New York*, 346 U.S. 156, 185-86 (1953) (12 hours of intermittent questioning over a 32-hour period); *Williams v. Norris*, 576 F.3d 850, 854, 868-69 (8th Cir. 2009) (13-hour interrogation); *United States v. Dehghani*, 550 F.3d 716, 721 (8th Cir. 2008) (interrogation that lasted five and-a-half hours); *Jenner v. Smith*, 982 F.2d 329, 334 (6 or 7 hours of questioning), *cert. denied*, 510 U.S. 822 (1993); *Sumpter v. Nix*, 863 F.2d 563, 564-65 (8th Cir. 1988) (seven and-a-half consecutive hours); *see also Berghuis*, 560 U.S. at 386-87 (no authority for the proposition that a three-hour interrogation "is inherently coercive;" where interrogations of lengthy duration were held to be improper, they were accompanied by other indicia of coercion, such as an incapacitated suspect, sleep and food deprivation, and threats, *citing Connelly*, 479 U.S. at 163-64, n.1).

[24]*See Berghuis*, 560 U.S. at 382-89; *Adams*, 820 F.3d at 323-24; *United States v. Morgan*, 729 F.3d 1086, 1092 (8th Cir. 2013); *Vinton*, 631 F.3d at 483; *Mapes*, 412 F.3d at 976-78; *see also United States v. Plugh*, 648 F.3d 118, 127-28 (2d Cir. 2011) (defendant knowingly and voluntarily waived his *Miranda* rights both expressly and through a course of conduct indicating waiver); *United States v. Oliver*, 630 F.3d 397, 409-10 (5th Cir.) (waiver of suspect's Fifth Amendment rights could clearly be inferred from his words and actions), *cert. denied*, 132 S.Ct. 758 (2011).

10

authorities adhered to the dictates of *Miranda* are rare."[25] Cordier nevertheless claims that his statements to Agent Ramirez were involuntary.

Due process requires guilt-laden statements or "confessions" be voluntary.[26] A statement is voluntary if it is "the product of an essentially free and unconstrained choice by its maker."[27] Conversely, "[a] statement is involuntary when it [is] extracted by threats, violence or express or implied promises sufficient to overbear [the suspect's] will and critically impair his capacity for self-determination."[28] The same analysis concerning the voluntariness of a suspect's *Miranda* waiver applies in determining whether the suspect's statements were voluntary under the Fifth Amendment.[29]

The Court has already concluded that the overall atmosphere of the interview was not hostile or coercive and that Cordier was not threatened or intimidated or promised anything. He denied engaging in any sexual acts with D.F., saying that she was lying, and even agreed to take a polygraph examination to prove his innocence.

---

[25]*Dickerson v. United States*, 530 U.S. 428, 444 (2000) (quoting *Berkemer v. McCarty*, 468 U.S. 420, 433, n. 20 (1984)).

[26]*See Brown v. Mississippi*, 297 U.S. 278, 285-86 (1936); *see also Schneckloth v. Bustamante*, 412 U.S. 218, 225-26 (1973) (a voluntary confession may be used against a suspect, but an involuntary one offends due process).

[27]*Schneckloth*, 412 U.S. at 225.

[28]*United States v. LeBrun*, 363 F.3d 715, 724 (8th Cir. 2004) (en banc), cert. denied, 543 U.S. 1145 (2005).

[29]*See Makes Room For Them*, 49 F.3d at 415; *United States v. Fast Horse*, CR. 12-30034-RAL, slip op. at 5 (D.S.D. July 24, 2012).

The record as a whole plainly shows that Cordier's statements were voluntary. They are ones that he wanted to make and they were not the product of any coercive environment and questioning that overwhelmed his faculties and acutely disabled his ability to resist the urge to confess. This being the case, his statements may be used against him as substantive evidence at trial.

## CONCLUSION

Cordier was advised of all of his *Miranda* rights, waived these rights without clearly and unequivocally invoking them, and made unconstrained statements to Agent Ramirez. He never requested a break or made any attempt to stop the two and three-quarter hour interview because he was tuckered out or soporific. Whatever stratagems the agent employed did not sway Cordier and make him admit to anything he did not want to. Because Cordier's statements were obtained in compliance with the edicts of *Miranda* and the Fifth Amendment, they are freely admissible as trial evidence.

## RECOMMENDATION

Accordingly, it is hereby

RECOMMENDED that Cordier's Motion to Suppress Statements[30] be denied for the reasons, and based on the authorities, stated herein.

---

[30]*See* Dkt. No. 26.

## NOTICE

The parties have 14 calendar days after service of this report and recommendation to file their objections to the same.[31] Unless an extension of time for cause is obtained,[32] failure to file timely objections will result in the waiver of the right to appeal questions of fact.[33] Objections must "identify[] those issues on which further review is desired[.]"[34]

DATED this 21st day of October, 2016.

BY THE COURT:

*[signature]*

MARK A. MORENO
UNITED STATES MAGISTRATE JUDGE

---

[31] *See* 28 U.S.C. §636(b)(1); Fed. R. Crim. P. 59(b).

[32] *See Thompson v. Nix*, 897 F.2d 356, 357 (8th Cir. 1990); *Nash v. Black*, 781 F.2d 665, 667 & n.3 (8th Cir. 1986) (*citing Thomas v. Arn*, 474 U.S. 140, 155 (1985)).

[33] *See Thompson*, 897 F.2d at 357; *Nash*, 781 at 667.

[34] *Arn*, 474 U.S. at 155.