

UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>JOSEPH EDWARD CORDIER,<br><br>Defendant. | 3:16-CR-30068-RAL<br><br><br>OPINION AND ORDER ADOPTING IN PART REPORT AND RECOMMENDATION AND GRANTING IN PART MOTION TO SUPPRESS |

Joseph Cordier moved to suppress statements he made to a law enforcement officer, arguing that the officer violated <u>Miranda v. Arizona</u>, 384 U.S. 436 (1966) and that his statements were involuntary under the Fifth Amendment. The magistrate judge issued a report and recommendation recommending denying Cordier's motion, and Cordier has now objected to that recommendation. For the reasons explained below, this Court concludes that Cordier's statements are inadmissible in the government's case-in-chief but agrees with the magistrate judge that the statements were voluntary.

## I.   Facts

In November 2014, an FBI special agent interviewed Cordier at the jail in Winner, South Dakota about Cordier's alleged sexual abuse of D.F., the minor daughter of Cordier's ex-girlfriend. Before asking Cordier any questions, the FBI agent advised Cordier of his <u>Miranda</u> rights using an advice-of-rights form. That form read in part:

> Before we ask you any questions, you must understand your rights.
> You have the right to remain silent.

1

> Anything you say can be used against you in court.
> You have the right to talk to a lawyer for advice before we ask you any questions.
> You have the right to have a lawyer with you during questioning.
> If you cannot afford a lawyer, one will be appointed for you before any questioning if you wish.
> If you decide to answer questions now without a lawyer present, you have the right to stop answering at any time.

Ex. 5. The FBI agent read the form aloud, pausing after each line to ask Cordier whether he understood the right being explained. Ex. 1 at 02:05–03:23. Each time, Cordier confirmed that he did. Ex. 1 at 02:05–03:23. The FBI agent then read the "Consent" portion of the form to Cordier and asked him to sign it. Ex. 1 at 03:25–04:05. The "Consent" portion of the form stated: "I have read this statement of my rights and I understand what my rights are. At this time, I am willing to answer questions without a lawyer present." Ex. 5. Cordier looked at the form before the following exchange took place:

> Cordier: So I'm not surrendering any rights right now?
> FBI agent: What's that?
> Cordier: I'm not surrendering any rights?
> FBI agent: No, no, of course not. I am advising you of your rights. And you are, you know, you are allowing me to talk to you, and so you are waiving your rights. But like I said on this last one, uh it's the most important one, this is completely voluntary. The only reason why I am doing this is because you are in custody by something completely unrelated from local stuff here. That's the only reason why I'm reading this to you. Okay?
> Cordier: But I don't wanna waive my rights though.[1]
> FBI agent: Well, I mean, you have to first waive your rights in order for me to talk to you. It says here "I have read the statement of my rights and I understand what my rights are." Okay? What you, what you're doing is that you are going ahead and you understand all of your rights that you have at any time. Okay? And what you're doing is at this time you are willing to

---

[1]The magistrate judge believed that Cordier said "Well, I don't wanna waive my rights though" rather than "*But* I don't wanna waive my rights though." One of Cordier's factual objections is that he said "but" rather than "well." This Court has viewed this section of the interrogation multiple times. After listening to the statement multiple times, this Court has determined that Cordier said "But I don't wanna waive my rights though."

answer questions without a lawyer present. If you understand all of
this and at this time you are willing to answer questions, go ahead
and sign there. And basically uh, at any time like I said here, you
can talk to me.

Ex. 1 at 04:05–05:37. Cordier said "okay" and signed the form, after which he and the FBI agent

discussed the waiver further:

> FBI agent: And at any time you can go ahead and and uh
> ascertain one of these rights.  Okay?
> Cordier: Okay.
> FBI agent: It's completely voluntary bro.
> Cordier:  Okay.
> FBI agent: All right?
> Cordier: All right.
> FBI agent: You know it's not a, not a big…
> Cordier: I was, I was just wondering . . .
> FBI agent: No, no, I hear ya.  And when I say waiving it
> just means that temporarily right now you are allowing me to talk
> to you, okay?  At any time you can tell me to go screw myself.  All
> right?
> Cordier: All right.

Ex. 1 at 05:25–06:02.

The FBI agent then questioned Cordier about his background and whether he had

sexually abused D.F.  Ex. 1.  Although Cordier repeatedly denied having sexual contact with

D.F., he recounted one occasion where he was asleep in his bed and awoke to D.F. "squirming"

on top of him and watching a pornographic movie.  Ex. 1.  All told, the interview lasted

approximately two hours and forty-five minutes.  Ex. 2.

A federal grand jury indicted Cordier in 2016, charging him with the aggravated sexual

abuse and abusive sexual contact of D.F.  Doc. 1.  Cordier moved to suppress the statements

from his interrogation, Doc. 26, and the government filed a brief in opposition, Doc. 28.  The

magistrate judge held an evidentiary hearing at which he received several exhibits into evidence,

including a copy of the advice-of-rights form Cordier signed and a video recording, an audio

recording, and transcript of the interrogation. The magistrate judge also heard testimony from the FBI agent.

The magistrate judge issued a report and recommendation recommending that Cordier's motion to suppress be denied, Doc. 43, and Cordier has now objected to some of the magistrate judge's factual findings and legal conclusions, Doc. 44. This Court reviews a report and recommendation pursuant to the statutory standards found in 28 U.S.C. § 636(b)(1), which provides in relevant part that "[a] judge of the [district] court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made."

## II. Analysis

### A.     Factual Objections

Cordier's factual objections all focus on the magistrate judge's discussion of the first six minutes of the interrogation. Cordier claims that the magistrate judge misquoted Cordier and the FBI agent, attributed a statement to the FBI agent that he never actually made, and failed to include statements by the FBI agent that are relevant to his motion to suppress. This Court has viewed the video recording multiple times and has transcribed the portion of the interrogation Cordier focuses his objections on. This transcription accurately sets forth what was said during that portion of the interrogation and is sufficient to address Cordier's factual objections.

### B.     Invocation of Rights

Cordier argues that the magistrate judge erred by concluding that Cordier never invoked his Miranda rights. The Supreme Court in Miranda held that if a suspect undergoing custodial interrogation "indicates in any manner" that he wants to remain silent, the interrogation must stop. Miranda, 384 U.S. at 473–74. Similarly, if the suspect requests an attorney, the

interrogation must cease until an attorney is provided. Id. at 474. Since Miranda, the Supreme Court has made clear that a suspect who wishes to invoke either the right to remain silent or the right to an attorney must "do so unambiguously." Berghuis v. Thompkins, 560 U.S. 370, 381 (2010); Davis v. United States, 512 U.S. 452, 459 (1994). That is, the suspect "must articulate his desire . . . sufficiently clearly that a reasonable police officer in the circumstances would understand the statement to be [an invocation of the right]." Davis, 452 U.S. at 459; Berghuis, 560 U.S. at 381 (applying the invocation-of-the-right-to-counsel standard outlined in Davis to determine whether a defendant invoked his right to remain silent). Once a suspect unambiguously invokes his Miranda rights, police cannot reinitiate questioning unless they follow certain procedures. Edwards v. Arizona, 451 U.S. 477, 484–85 (1981); Michigan v. Mosley, 423 U.S. 96, 104 (1975). When a suspect invokes his right to remain silent, police must "scrupulously honor[]" this invocation by, at the very least, ceasing the interrogation immediately and waiting a substantial period before reinitiating questioning. See Mosley, 423 U.S. at 104–06 (finding that officers "scrupulously honored" the defendant's right to remain silent because the officers immediately stopped the interrogation upon the defendant's request, reinitiated questioning only after over two hours had passed and they had given the defendant a fresh set of Miranda warnings, and limited the second interrogation "to a crime that had not been a subject of the earlier interrogation"). When a suspect invokes his right to counsel, he "is not subject to further interrogation by the authorities until counsel has been made available to him, unless the [suspect] himself initiates further communication, exchanges, or conversations with the police." Edwards, 451 U.S. at 484–85. Failure to abide by these procedures renders any statements the suspect made after invoking his rights inadmissible in the government's case-in-

chief. Stansbury v. California, 511 U.S. 318, 322 (1994) (per curiam); Oregon v. Hass, 420 U.S. 714, 722–23 (1975).

Cordier argues that he unambiguously invoked his Miranda rights when he said "But I don't wanna waive my rights though." Context matters when determining whether a suspect unambiguously invoked his Miranda rights; an invocation that is ambiguous by itself may be unambiguous when considered in conjunction with the statements or events preceding it. In Smith v. Illinois, 469 U.S. 91 (1984) (per curiam), for instance, the Supreme Court held that a suspect unambiguously invoked his right to counsel when he replied "Uh, yeah. I'd like to do that" after a detective asked him whether he understood that he had a right to an attorney. Id. at 93, 96–97 (emphasis omitted). Although the suspect's statement may have had little meaning standing alone, it was unambiguous when considered alongside the question to which the suspect was responding.

An illustrative case is United States v. Payne, No. 4:15CR245 HEA (SPM), 2015 WL 6445460 (E.D. Mo. Aug. 24, 2015), adopted by No 4:15CR245 HEA, 2015 WL 6445352 (E.D. Mo. Oct. 23, 2015). The officer in Payne asked the suspect to sign a consent form stating "I have read this statement of my rights and I understand what my rights are. At this time, I am willing to answer questions without a lawyer present." Id. at *2–3 (emphasis omitted). The suspect replied "I mean I don't want to sign that's a consent. I'm not giving any kind of consent to anything." Id. at *2. Reasoning that the officer's request that the suspect sign the consent form equated to asking the suspect whether he would answer questions without a lawyer present, the judge concluded that the suspect's statement and refusal to sign the consent form constituted an unambiguous invocation of Miranda rights. Id. at *7–8. The district court in United States v. Plummer, 118 F. Supp. 2d 945 (N.D. Iowa 2000) reached a similar conclusion. In Plummer,

6

police read the suspect his <u>Miranda</u> rights and asked him to sign a waiver. <u>Id.</u> at 949. The suspect refused to sign the waiver and said "I don't want to waive my rights." <u>Id.</u> at 949, 951. The district court held that the suspect's statement, considered in conjunction with his refusal to sign the waiver, was an unambiguous invocation of his right to remain silent. <u>Id.</u> at 953. The decision <u>United States v. Horton</u>, No. 4:08CR3005, 2009 WL 1872612 (D. Neb. June 30, 2009) provides still another illustration that context matters. The officer in <u>Horton</u> read the suspect his Miranda rights and then asked him whether he was "willing to waive these rights and talk to me right now?" <u>Id.</u> at *4. The suspect replied "No, I'm not. Not that I don't trust you. I just . . ." <u>Id.</u> Citing to <u>Smith,</u> the district court concluded that the suspect's reply was an unambiguous invocation of the right to counsel. <u>Id.</u> at *5.

Whether Cordier unambiguously invoked his <u>Miranda</u> rights is a close question, as he neither said the word "lawyer," nor explicitly stated that he wanted to remain silent. When viewed in context, however, Cordier's statement that he did not want to "waive [his] rights though"—coming after he twice asked if he was surrendering any rights and was initially told by the FBI agent "No, no, of course not"—evinced an unambiguous desire to invoke his right to remain silent. The FBI agent read Cordier his <u>Miranda</u> rights and asked him to sign the portion of the form stating "I have read this statement of my rights and I understand what my rights are. At this time, I am willing to answer questions without a lawyer present." Ex. 5. When Cordier hesitated to sign the form and questioned the FBI agent about the effect of doing so, the FBI agent explained that speaking with him would constitute a waiver of Cordier's rights. Cordier replied "But I don't wanna waive my rights though." A reasonable police officer in such a setting would understand Cordier's statement as an invocation of the right to remain silent. <u>See</u> <u>Smith,</u> 469 U.S. at 96–97; <u>Payne,</u> 2015 WL 6445460, at *7–8; <u>Horton,</u> 2009 WL 1872612, at

*4–5; Plummer, 118 F. Supp. 2d at 953.   Rather than scrupulously honoring Cordier's unambiguous invocation as Miranda and its progeny require, the FBI agent interrogated Cordier.[2] Any statements the FBI agent elicited after Cordier invoked his right to remain silent are therefore inadmissible in the government's case-in-chief. Stansbury, 511 U.S. at 322; Hass, 420 U.S. at 722–23.

The magistrate judge concluded that Cordier's statement that he did not "wanna waive [his] rights though" was ambiguous because the word "'though' qualified the assertion of any right." Doc. 43 at 5.  The interrogation video undercuts this conclusion.  It shows that Cordier's statement was in response to the FBI agent's explanation that speaking with him constituted a waiver of Cordier's rights.  Cordier used the word "though" to emphasize that he did not want to waive his rights as the FBI agent had just described, rather than to qualify or introduce something opposed to what Cordier had just said.  The case of People v. Glaspie, No. 320377, 2015 WL 3796241 (Mich. Ct. App. June 18, 2015) (per curiam), an unpublished decision from the Michigan Court of Appeals on which the magistrate judge relied to conclude that Cordier's statement was ambiguous, is distinguishable because of the context of the statements made.  In Glaspie, the defendant said he would talk with police and signed a waiver-of-rights form but then made an unsolicited statement that he did not "wanna waive [his] rights though." Id. at *2.  The Michigan Court of Appeals held that the defendant's statement was equivocal because the 'word 'though' qualifies the assertion of the right." Id. at *3.  However, unlike the defendant in Glaspie, Cordier made the statement invoking his rights before saying that he would speak with police, signing a waiver form, or doing anything else.  The evidence of ambiguity in Glaspie— the defendant's statement that he agreed to talk to the police and signing of the Miranda rights

---

[2]The FBI agent did respond to Cordier by explaining the waiver of rights in at best a partially correct and partially confusing manner.

waiver form before the unsolicited statement about not wanting to waive rights—is absent here. Indeed, before Cordier's statement that he did not "wanna waive my rights," Cordier asked the FBI agent "So I'm not surrendering any rights right now?" and "I'm not surrendering any rights?" The FBI agent responded "No, no, of course not," followed by a somewhat contradictory explanation. While the content of the statement in Glaspie is basically identical to Cordier's statement, the context of the statement is quite different.

The magistrate judge also found that the FBI agent properly asked Cordier clarifying questions after Cordier said that he did not "wanna waive [his] rights though" and that Cordier communicated his willingness to talk by signing the consent form and speaking with the FBI agent. A suspect's unambiguous invocation of his Miranda rights cannot be rendered ambiguous by continued interrogation, however. See Smith, 469 U.S. at 100 ("[A]n accused's *postrequest* responses to further interrogation may not be used to cast retrospective doubt on the clarity of the initial request itself."). Cordier's conduct after his unambiguous statement is irrelevant to determining whether he properly invoked his Miranda rights. Id. Even if post-invocation conduct was relevant, the FBI agent's statements after Cordier said that he did not "wanna waive [his] rights though" were confusing. The FBI agent did not ask if Cordier wanted to stop the interrogation, remain silent, or contact an attorney. Instead, he proceeded to give Cordier an incomplete and confusing explanation about the effect of signing the form's consent provision.

This Court recognizes that a suspect's statement that he doesn't want to waive his rights in some circumstances is not an unambiguous invocation of Miranda rights. See United States v. Acosta, 363 F.3d 1141, 1154 (11th Cir. 2004) (explaining that although suspect's statement "'No, I'm not going to waive my rights' . . . . might well have been clear enough" to invoke his Miranda rights, the statement was ambiguous because the suspect immediately volunteered after

making it that "I can collaborate, I can talk with you now"); cf. United States v. Plugh, 648 F.3d 118, 125 (2d Cir. 2011) (explaining in a case involving a suspect's refusal to sign a written waiver that "a refusal to *waive* rights, however unequivocal, is not necessarily equivalent to an unambiguous decision to *invoke* them"); United States v. House, 939 F.2d 659, 662 (8th Cir. 1991) (holding that the suspect did not unambiguously invoke his rights when he signed an advice-of-rights form saying that he understood his rights, refused to sign the waiver-of-rights portion because "one signature [was] enough for [the police]," and then proceeded to answer questions). In this case, however, the context surrounding Cordier's refusal to waive his rights made it sufficiently clear that Cordier was invoking his right to remain silent.[3]

### C.     Voluntariness

Cordier also argues that the magistrate judge should have found that his statements were involuntary under the Fifth Amendment. If the statements Cordier made after invoking his right to remain silent were voluntary, the government can use them to impeach Cordier at trial. Meis v. Wyo. Dep't Corrs., 9 F.3d 695, 697 (8th Cir. 1993). "A statement is involuntary when it was extracted by threats, violence, or express or implied promises sufficient to overbear the defendant's will and critically impair his capacity for self-determination." United States v. LeBrun, 363 F.3d 715, 724 (8th Cir. 2004) (en banc) (quoting Simmons v. Bowersox, 235 F.3d 1124, 1132 (8th Cir. 2001)); see also Schneckloth v. Bustamonte, 412 U.S. 218, 226–27 (1973). In determining whether a statement was involuntary, both the conduct of the police and the personal characteristics of the defendant must be considered. See Sheets v. Butera, 389 F.3d 772, 779 (8th Cir. 2004) ("We consider, among other things, the degree of police coercion, the

---

[3]Cordier also argues that his statements should be suppressed because he did not make a knowing, intelligent, and voluntary waiver of his Miranda rights. Because this Court is granting Cordier's motion to suppress on a different ground, it is unnecessary to consider this argument.

length of the interrogation, its location, its continuity, and the defendant's maturity, education, physical condition, and mental condition."); LeBrun, 363 F.3d at 724; United States v. Pierce, 152 F.3d 808, 812 (8th Cir. 1998).

This Court agrees with the magistrate judge that Cordier did not exhibit any personal characteristics suggesting that he was particularly susceptible to questioning by police. Cordier has an eleventh-grade education and prior experience with the criminal justice system. He was not under the influence of drugs and alcohol and was not experiencing mental or physical distress. He answered the FBI agent's questions appropriately and was alert and engaged throughout the entire interrogation.

Cordier does not specifically object to the magistrate judge's findings about his personal characteristics, but argues that his statements were involuntary because the FBI agent violated his Miranda rights. Although the FBI agent ignored Cordier's one-time invocation of his right to remain silent and gave a confusing explanation about the consent provision, he did not engage in any other inappropriate conduct. The FBI agent never made any threats or promises, raised his voice, brandished a weapon, or used force against Cordier. Exs. 1, 2. Moreover, nothing in the video or audio recordings of the interview suggests that the FBI agent overbore Cordier's will by violating Miranda; Cordier called D.F. a liar and repeatedly denied having sexual contact with her even after he admitted to waking up with her "squirming" on top of him while watching a pornographic video. On this record, the FBI agent's run-of-the-mill Miranda violation did not make Cordier's statements involuntary. See United States v. Murdock, 667 F.3d 1302, 1306 (D.C. Cir. 2012) (holding that officer's failure to honor suspect's invocation of his right to remain silent was "insufficient by itself to establish involuntariness").

11

Cordier also contends that the length of the interrogation made it involuntary. As the magistrate judge explained, however, the Eighth Circuit has rejected arguments that a lengthy interrogation automatically renders a suspect's statements involuntary. United States v. Dehghani, 550 F.3d 716, 721 (8th Cir. 2008) (holding that a five-and-a-half hour interrogation was "not sufficient to render the confession involuntary per se") Jenner v. Smith, 982 F.2d 329, 334 (8th Cir. 1993) (holding that six or seven hours of questioning did not make the suspect's statements involuntary). Here, the interrogation was two hours and forty-five minutes long but Cordier maintained his innocence throughout and never asked to take a break. The video and audio recordings of the interrogation simply do not support Codier's contention that his will was overborne. Because Cordier's statements were voluntary, the prosecution may use them to impeach him.

### III.     Conclusion

For the reasons explained above, it is

ORDERED that the Report and Recommendation for Disposition of Motion to Suppress Statements, Doc. 43, is adopted in part and refused in part. It is further

ORDERED that Cordier's Motion to Suppress Statements, Doc. 26, is granted in part and denied in part as set forth in this Opinion and Order.

DATED this 16th day of December, 2016.

BY THE COURT:

ROBERTO A. LANGE
UNITED STATES DISTRICT JUDGE